[No. 2052]

STATE OF NEVADA, Ex Rel. J. ANDREW GUTTERY, Petitioner, *v.* FRANK P. LANGAN, Judge of the District Court of the State of Nevada, in and for the County of Lyon, Respondent.

1. Justice of the Peace—District Court—Jurisdiction—Pleading.

A complaint in a justice's court alleging, in effect, that defendant undertook the collection of a lien on certain mining property for one S. and thereafter recovered the full amount of the lien claim; that after suit was instituted, but prior to judgment, S. assigned to plaintiff all interest in said lien claim subject to the payment of costs and expenses of collection; that, after paying such costs and expenses, defendant had remaining in his possession $154.55; that plaintiff was the owner of said lien and entitled to an accounting from defendant of the amount realized; that defendant owes plaintiff $154.55 and demands judgment therefor, states a cause of action sufficiently to invest the justice's court with jurisdiction to try the action originally and the district court to try the same *de novo* on appeal.

2. Justice of the Peace—Pleadings.

The same technical pleadings are not required in a civil action in the justice's court as is required in a criminal complaint, or in pleadings in the district courts.

3. LIENS—ASSIGNMENT—RECORD—NOTICE.
   The filing with the county recorder of an assignment of a lien is constructive notice to all parties interested in such assignment.
4. ESTATES OF DECEDENTS—MISTAKE.
   Where money is deposited with a county clerk under the mistaken belief that it belongs to the estate of a decedent, upon whose estate no application for administration has been made, such money remains subject to the control of the person making the deposit, and may be withdrawn by him.

ORIGINAL PROCEEDING in *certiorari.* J. Andrew Guttery instituted proceeding in *certiorari* to review a judgment of the District Court of the First Judicial District, in and for Lyon County, on appeal from a justice's court and to have the same annulled, as in excess of jurisdiction. **Writ denied.**

The facts sufficiently appear in the opinion.

*J. Andrew Guttery,* for Petitioner.

*H. K. Pilkington,* for Respondent.

By the Court, TALBOT, C. J.:

Petitioner applies for a writ of *certiorari* to review the action of the district court, which he claims was without jurisdiction to try and to render judgment against him under the following conditions:

On the 16th day of February, 1909, petitioner, as an attorney at law, brought an action in the district court of Douglas County for one Harry Simpson, plaintiff, against the Buckskin Gold Nugget Mining Company, a corporation, defendant, to foreclose a mechanic's lien amounting to $374 for wages on mining claims situated in Douglas County. Pending this action, Simpson became afflicted with a fatal illness, and, being apprehensive of death, had the bills against him presented, including bills mentioned in the petition, and one for $150 owing petitioner for legal services, and signed an indorsement acknowledging that he owed them, and requesting that they be paid out of any property which he possessed, which indorsement was witnessed by Theodore H. Trankle. Simpson authorized the petitioner to retain the $150 out

of any moneys that he might recover in the suit pending against the Buckskin Gold Nugget Mining Company.

While the action was pending, and on the 17th day of June, 1910, before judgment was obtained, Simpson made an assignment of his claim and lien for the wages hereinbefore mentioned to Trankle, who filed this assignment for record with the county recorder at Genoa on June 9, 1910, but did not otherwise notify the company that he was the assignee of the claim and lien. Trankle was not substituted and did not request to be substituted in the action.

Simpson died on July 6, 1910, and on the 14th of that month, after publication of notice to lien claimants, petitioner, purporting to act as attorney for Simpson, obtained a decree of the district court in the name of Harry Simpson against the Buckskin Gold Nugget Mining Company for the sum of $350 and costs. Trankle did not appear in court, or under his assignment or otherwise except to these proceedings.

After publication of notice of sale, and on the 29th day of July, 1910, the sheriff on the advice of petitioner, purporting to act for Simpson, accepted from J. A. Knox $425 for release and satisfaction of the judgment of decree for foreclosing the lien against the Buckskin Gold Nugget Mining Company. On August 5 following, a purported satisfaction and discharge of the lien and judgment was entered. From the amount so collected, and after making deductions for fees of the sheriff and clerk and for publication of notice, the sheriff sent the petitioner $357.05. After deducting costs, including fee of $150 for the petitioner, he sent to the clerk, with direction to credit to Harry Simpson, deceased, subject to the order of the district court of Douglas County, the balance of $154.55, which was deposited with the clerk on the 26th day of August, 1910, and has since remained with him, and which has been the bone of contention.

It is alleged that Trankle did not make known to petitioner the assignment of Simpson's claim or lien until after the judgment and decree had been obtained, and that, before bringing suit against petitioner, Trankle

knew that the $154.55 had been so deposited with the clerk, subject to the order of the district court of Douglas County, on the 26th day of August. On December 1, 1910, Trankle commenced an action in the justice's court in Mason Valley township, Lyon County, against petitioner to recover that sum, and in the complaint alleged that petitioner: "Undertook the collection on behalf of one certain Harry Simpson of a mining lien against the Buckskin Gold Nugget Mining Company for $408, and on or about the 12th day of July, 1910, defendant as attorney for said lien received into his hands the sum of $357.05, and, after deducting from said amount all his claims for fees and expenses, he was accountable to the owner thereof for $154.55. That on or about the 7th day of June, 1910, plaintiff for a good and valuable consideration purchased of Harry Simpson the said lien of $408 against the Buckskin Gold Nugget Mining Company, and ever since the said 7th day of June, 1910, plaintiff has been the owner of said lien and entitled to an accounting from said defendant of the amount realized, * * * and defendant, though often importuned, refuses and fails to pay said amount, and defendant owes $154.55 at this day to plaintiff."

After trial, and on December 22, 1910, judgment was rendered in the justice's court in favor of Trankle and against the petitioner for $154.55 and attorney's fees and costs, and after appeal and trial in the district court this judgment of the justice's court was affirmed on the 18th day of November, 1912.

Petitioner contends that in entering judgment against him the justice's court and the district court on appeal had "no jurisdiction over the money and property of a deceased person, in that the matters stated in such complaint are not such allegations as to establish a contract between the said plaintiff, Theodore H. Trankle, and the defendant, J. Andrew Guttery, for the payment of money, in that said complaint contains no allegation establishing any contract between the said plaintiff and the said defendant, and in that the complaint, even if it establishes a trust relation between the said plaintiff and the

said defendant, said justice's court had no jurisdiction over trust relations." It is urged that the justice of the peace cannot adjudicate claims against the estates of deceased persons; that such claims cannot be reached by attachment or execution before distribution; that sufficient facts did not exist on which an action against the petitioner could be predicated; that petitioner did not have in his posession or control the $154.55 at the time the suit was brought, and that he never promised to pay that sum to Trankle; that, by failure to give notice of his assignment to petitioner and to the Buckskin Gold Nugget Mining Company, Trankle lost any right under the assignment; that, if the Simpson judgment was void because obtained after his death, the justice's court had no jurisdiction over moneys obtained under a void judgment, and that for these reasons the district court had no jurisdiction on appeal.

It is further claimed that the justice's court by assuming jurisdiction in the first instance, and the district court assuming jurisdiction on the appeal, have subjected the petitioner to an expensive suit which is wholly unwarranted in law, and forced him to defend the action and resist the execution of judgment, or accept the alternative of being liable in double the amount in controversy to the estate of Harry Simpson, deceased, under section 95 of the probate act.

Petitioner alleges that he has exhausted his right of appeal, and that the judgment will be carried into effect unless reviewed by this court.

In reference to the contention that the complaint in the justice's court does not state facts sufficient to constitute a cause of action, it is said that certain statements in that complaint, such as that "he was accountable to the owners," "and ever since the 7th day of June, 1910, plaintiff has been the owner of said lien," "and entitled to an accounting from defendant of the amount released," are conclusions of law. This may be conceded, and still the complaint, taken as a whole, is sufficient. The allegation that the defendant in that action, who is the petitioner here, undertook the collection of the

mining lien of Harry Simpson against the Buckskin
Gold Nugget Mining Company for $408, and that on this
lien petitioner received into his own hands the sum of
$357, and that after deducting fees and expenses he was
accountable to the owner thereof for $154, and that
Trankle, the plaintiff in the action in the justice's court,
for a valuable consideration purchased of Harry Simp-
son the lien of $408 against that company, states suffi-
cient facts to support the conclusions of the justice and
district courts that Trankle, as the plaintiff in that
action, has ever since been the owner of the lien, and
that $154.55 is due him from the petitioner.

The same technical pleadings are not required in a
civil action in the justice's court that are necessary in
a criminal proceeding which may deprive one of his
liberty, or in a case originating in the district court. In
either court meager allegations showing the issue may
support a pleading attacked after judgment which might
be deemed insufficient before. Allegations in the nature
of conclusions of law are generally sufficient in some
forms of action, such as statements merely asserting
ownership or possession of property in ejectment and
replevin, or that a specified sum is owing upon an
account for articles sold and delivered. It is not intended
that the pleadings in civil action in justice's courts, in
which any person unskilled in the law may appear as
attorney, shall be difficult. They may be direct and
simple. Our former civil practice act provided for the
commencement of actions in justices' courts "by filing
a copy of the account, note, bill or instrument upon
which the action was brought, or a concise statement in
writing of the cause of action, and the issuance of a
summons thereon, or by the voluntary appearance and
pleadings of the parties."

The new code provides that the pleadings in justices'
courts are not required to be in any particular form, but
must be such as to enable a person of common under-
standing to know what is intended. With the exception

of the complaint, they may be oral or in writing. The purpose of the revised code is not to make the requirements for the administration of justice more stringent or difficult, but more certain, definite, and simple. We have been referred to cases in courts of record in which statements in complaints in the nature of conclusions of law, attacked before judgment was rendered, were held insufficient to state facts constituting a cause of action. Differently from provisions relating to justices' courts, both the new and the old codes provide that in an action commenced in the district court the complaint shall contain "a statement of the facts constituting the cause of action, in ordinary and concise language."

The complaint filed in the justice's court against the petitioner contains statements which would indicate to persons of ordinary understanding that it was sought to recover, after payment of costs, the balance of the money paid by the Buckskin Gold Nugget Mining Company to the petitioner on the claim of lien of Harry Simpson against the company which had been assigned by him to Trankle.

Under the constitution and statute the justice's court is the only one having jurisdiction to try and the power to hear and determine demands or controversies regarding simply the recovery of money where the amount involved does not exceed $300, and the district court is the only one having appellate jurisdiction of such controversies. The action of Trankle against the petitioner being simply for the recovery of money in an amount less than $300, it could be brought only in the justice's court.

Evidently the petitioner made a mistake by treating the lien as a claim belonging to the estate of a deceased person. Under the assignment made by Simpson the lien passed to Trankle instead of remaining the property of Simpson or becoming a part of his estate. Whether Simpson lived or died, Trankle could collect the claim secured by the lien without making Simpson or his

administrator a party. As assignee, the same as the endorsee of ordinary commercial paper, Trankle had the right to be substituted as plaintiff and maintain in his own name the suit against the Buckskin Gold Nugget Mining Company to foreclose the lien or recover the money, the same as the endorsee of a note or the transferee of a mortgage or other instrument. If the owner of property executes a mortgage and later sells the property, the holder of the mortgage, if willing to rely on the property for the satisfaction of the debt, may bring an action against the grantee to foreclose, and have the property sold in satisfaction of the mortgage without making the original owner a party.

If it be conceded that at the time the Buckskin Gold Nugget Mining Company paid the money to petitioner both were unaware that Simpson had made an assignment of the lien; that the money was paid with the expectation that petitioner would pay it to Simpson; that there was no agreement for paying it otherwise, and that petitioner paid it to the county clerk as ex officio clerk of the district court under the belief that the money belonged to the estate of Harry Simpson, deceased, nevertheless, from the undisputed facts as they appear in this proceeding, and from the complaint in the justice's court, Simpson had made the assignment transferring the claim and lien to Trankle, and the record of the assignment was constructive notice to petitioner and the company at the time the money was paid by the company, and the money, being paid on the claim and lien, in law belonged to Trankle as the assignee of the claim, and as such assignee he was entitled to recover it. If petitioner had paid the money to Simpson, or to any one who had been entitled to receive it, before there was notice of the assignment, the law would not require him to pay it a second time. The act relating to conveyances provides that "every instrument in writing setting forth an agreement to convey any real estate or whereby any real estate may be affected, * * *. acknowledged, certified and recorded, shall from the

time of filing with the recorder for record impart notice to all persons of the contents."

It does not appear that any special or general administrator or executor was appointed, nor that any application for administration on the estate of Harry Simpson, deceased, was made. There being no statute providing for the payment of the money to the clerk, and no court order regarding it, any payment to him by the petitioner under the mistaken belief that the money belonged to the estate of Harry Simpson, deceased, was not authorized by law, and the amount remains subject to the control of the petitioner, because he is responsible for its payment to Trankle under the judgment which the justice's court had jurisdiction to render.

If under any contention in the case it could be held that the assignment did not transfer the lien and right of action to Trankle, and that the claim continued to belong to Simpson, differently than in the case of an action upon a claim against an estate, which cannot be maintained until after the presentation to and rejection by an administrator or district judge, the justice's court would have had jurisdiction, if an action had been brought by him or his administrator to recover the sum mentioned, to which Trankle became entitled under the assignment.

The question of the invalidity of the judgment or the lien rendered after Simpson's death is immaterial, for none of the cost incident to the action is involved in the case in the justice's court. The expense of the suit to foreclose the lien was collected from the company and paid. Notwithstanding Trankle did not become a party to that action, he is entitled to the money paid for the satisfaction of the claim and lien which had been assigned to him, and jurisdiction of the action for the recovery thereof was vested in the justice's court, and in the district court on appeal.

The application for the writ is denied.